· THE BOARD OF EDUCATION, Appellant, *vs.* OTIS P. HA-
WORTH, Appellee.

*Opinion filed October 24, 1916.*

1. STATUTES—*what determines whether an act is amendatory.*
In determining whether an act is amendatory of an existing act
it makes no difference whether it professes to be an amendment
or not, but the character of the act is to be determined by an ex-
amination and comparison of its provisions with prior laws which
are left in force, and although the act purports to be complete in
itself, if it is merely an attempt to amend a law by intermingling
new and different provisions with the old ones or by adding new
provisions, creating out of the prior act and the new act a com-
plete law, the act is amendatory.

2. SCHOOLS—*section 5 of the act of 1915, providing payment of
high school tuition from State fund, is unconstitutional.* Section 5
of the act of 1915, (Laws of 1915, p. 631,) providing for the pay-
ment out of the State school fund, by the county superintendent,
of tuition of pupils attending high schools outside of their districts,
is an attempt to amend section 14 of the School law, concerning
the distribution of the school fund, by adding a new provision, and
violates section 13 of article 4 of the constitution, providing that
no law shall be revived or amended by reference to its title, only,
but the law revived or section amended must be inserted at length
in the new act.

3. SAME—*entire act of 1915, providing for payment of tuition
in high schools, is void.* Section 5 of the act of 1915, (Laws of
1915, p. 631,) providing for the payment of tuition for certain
pupils in high schools out of the State fund, reaches and covers the
entire purpose of the act, and is so connected in purpose and in-
tent with the remainder that the unconstitutionality of such sec-
tion renders the whole act void.

4. SAME—*high school is a part of the system of free schools.*
Section 1 of article 8 of the constitution is a command to the
General Assembly to provide a thorough and efficient system of
free schools where all children of the State may receive a good
common school education, and the high school is a part of the sys-
tem of free schools.

5. SAME—*establishing of district schools and high schools is a
local and corporate purpose.* In the execution of the duty enjoined
by the constitution the General Assembly has charged separate
school districts with the duty of maintaining the schools and rais-
ing money by taxation for their maintenance, so that establishing

both district schools and high schools is made a local and corporate purpose.

6. SAME—*section 5 of act of 1915, providing payment of high school tuition, violates section 1 of article 9 of the constitution.* Section 5 of the act of 1915, providing for the payment of high school tuition out of the State school fund for the benefit of eighth grade graduates in districts where no high schools are maintained, requires the tax-payers in other districts where high schools are maintained to indirectly contribute to the tuition of such persons and thereby to contribute to the local and corporate purpose of furnishing an education to the children of the districts maintaining no high schools, and violates the fundamental principle of uniformity and equality in taxation required by section 1 of article 9 of the constitution.

7. SAME—*act of 1915, providing payment of high school tuition from State fund, effects a release or commutation of taxes.* The act of 1915, providing for the payment of high school tuition from the State school fund for the benefit of eighth grade graduates in districts not maintaining high schools, amounts to a return to such school districts of a part of their taxes levied for a State purpose, which effects a practical release or commutation of taxes and violates section 6 of article 9 of the constitution.

8. TAXES—*what is the essential meaning of a tax.* The essential meaning of a tax is that it is a mode of raising revenue for the public needs for a public purpose pertaining to the district within which the tax is levied and collected.

APPEAL from the Circuit Court of Vermilion county; the Hon. WALTER BREWER, Judge, presiding.

CHARLES TROUP, (ROY H. BROWN, JOHN G. CAMPBELL, and HERMAN A. FISCHER, JR., of counsel,) for appellant.

JOHN H. LEWMAN, State's Attorney, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Vermilion county sustained a demurrer to the bill filed by the appellant praying the court to declare the act passed in 1915, (Laws of 1915, p. 631,)

providing for the payment of high school tuition from the State school fund, in violation of constitutional provisions, and dismissed the bill for want of equity at the costs of the appellant.

Section 14 of the School law provides that upon receipt of the amount due the county from the State school fund the county superintendent of schools shall apportion the same to the townships and parts of townships in his county in which schools are maintained as provided by law, according to the number of persons under twenty-one years of age returned to him, and shall pay the distributive share belonging to each township and fractional township to the township treasurer or authorized persons, annually. Section 5 of the act of 1915 provides that on or before the first day of April in each year the county superintendent of schools of each county, having ascertained the number of pupils from his county attending high schools under the provisions of the act and the amount of tuition due each of the schools attended, shall pay all such tuitions to the clerks of the boards in control of the schools out of the State school fund apportioned to that county before distributing the same as now provided by law. Section 13 of article 4 of the constitution provides that no law shall be revived or amended by reference to its title only, but the law revived or the section amended shall be inserted at length in the new act. It makes no difference in determining whether the act is amendatory of the existing act whether it professes to be an amendment or not, but the character of the act is to be determined by an examination and comparison of its provisions with prior laws which are left in force. Although an act purports to be complete in itself, if it is merely an attempt to amend a law by intermingling new and different provisions with the old ones or by adding new provisions, creating out of the prior act and the new act a complete law, the act is amendatory. (*People v. Knopf,* 183 Ill. 410; *Badenoch v. City of Chicago,*

222 id. 71; *Hollingsworth* v. *Chicago and Carterville Coal
Co.* 243 id. 98.)    Comparing section 14 of the School law
and section 5 of the act of 1915 it is found that they deal
with the same subject matter and together provide for the
distribution of the State school fund by county superintend-
ents, and that the provisions are intermingled with each
other.    One requires the county superintendent of schools
to apportion and distribute the share of the county in the
State school fund according to the number of persons under
twenty-one years of age in the several townships or parts
of townships in the county, and the other provides, concern-
ing the same fund, that the county superintendent shall first
pay out of the fund the tuition to each of the schools and
then distribute the balance as provided by the School law.
A county superintendent cannot determine his duty in dis-
posing of the school fund from either act alone but must
take both as his guide, and after obeying the mandate of
the law of 1915 go to the School law to which he is directed
by the act to determine what further shall be done concern-
ing the same subject matter.    The act of 1915 was an at-
tempt to amend the existing law concerning the distribution
of the school fund by adding a new provision, and the con-
stitution not having been complied with, the section is void.
Section 5 of the act of 1915 reaches and covers the entire
purpose of the act, and is so connected in purpose and in-
tent with the remainder as to render the whole act void.

The State school fund consists of the proceeds of a
State-wide tax levied annually, together with interest on
moneys which are part of the common school fund.    On the
first Monday in January, annually, the Auditor of Public
Accounts is required to apportion to each county the fund
in proportion to the number of persons in each county un-
der the age of twenty-one years, and the amount appor-
tioned to each county is to be paid to the county superin-
tendent of schools, to be apportioned and distributed by him
as above stated.    In 1913 the General Assembly levied a

tax by valuation upon the taxable property of the State of $3,000,000 for that year and a like tax for 1914, and in 1915 levied a tax of $4,000,000 for that year and $4,000,000 for 1916, in lieu of the two mill tax mentioned in section 210 of the School law, and the proceeds of these taxes were to be designated "The State School Fund." The act now under consideration provides that graduates of the eighth grade residing in districts which do not provide four years of recognized high school work shall be admitted, upon the payment of tuition, to any public recognized high school for the completion of a four years' high school course not provided by the home district. Parents or guardians are permitted to select the school to be attended, subject to the consent of the high school board and the approval of the county superintendent. On or before March 15 of each year the clerks of the school boards of the districts where tuition pupils reside, and the clerks of the boards of high schools attended by non-resident pupils, are required to report to the county superintendent the names of the pupils, the tuition charges, the school districts in which they reside and the names of the schools attended. The county superintendent is required to pay out of the State school fund apportioned to the county the tuition of such pupils, and may limit the maximum amount for tuition of each pupil to $40, provided the tuition in no instance shall be greater than the *per capita* cost of maintaining the school selected, and when the pupil attends less than the school year the tuition shall be based upon the number of months attended. The appellant maintains a high school, for which it spends $50 a year for each pupil attending the school, and from the school fund under the disbursement provided for by the general School law it received $8262.80 but under the act of 1915 in question it would receive only $6684.40. The act, in its substance, provides that the entire county shall pay the tuition bill of such districts therein as do not maintain high schools, out of that part of the State school

fund raised by taxation of all property in the State apportioned to the county.

Section 1 of article 9 of the constitution requires the General Assembly to provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. In making the provision for raising such revenue as might be needful by taxation the framers of the constitution, and the people adopting it, used a term of well known and established meaning. Such meaning and the legitimate purpose of taxation were understood and intended, and explain both the nature of the power and the limitations under which it is exercised. Whether the limitation is expressed in terms in the constitution or not, the essential meaning of a tax is that it is a mode of raising revenue for the public needs for a public purpose pertaining to the district within which the tax is levied and collected. These rules are fully explained in a work of high authority on the subject of taxation, from which the following brief extracts are taken:

"In the preceding chapter we have endeavored to show that in order to give validity to any demand made by the State upon its people under the name of a tax it is essential that the purpose to be accomplished thereby shall be public in its nature. But it is equally essential, as there intimated, that the purpose shall be one which in an especial and peculiar manner pertains to the district within which it is proposed that the contribution called for shall be collected and which concerns the people of that district more particularly than it does others. * * * Taxes are collected as proportionate contributions to public purposes, but to make them such in any true sense they must not only be such as between the persons called upon to pay them, but also as between those who ought to pay them. It is therefore of prime necessity in taxation that it should first be determined what public—whether State or local—should bear the bur-

den, and that it should then be imposed ratably as between those who constitute that public. * * * It can therefore be stated with emphasis that the burden of a tax must be made to rest upon the State at large or upon any particular district of the State, according as the purpose for which it is levied is of general concern to the whole State, or, on the other hand, pertains only to the particular district. A State purpose must be accomplished by State taxation, a county purpose by county taxation, or a public purpose for any inferior district by taxation of such district. This is not only just but it is essential. To any extent that one man is compelled to pay in order to relieve others of a public burden properly resting upon them, his property is taken for private purposes as plainly and as palpably as it would be if appropriated to the payment of the debts or the discharge of obligations which the person thus relieved by his payments might owe to private parties." (1 Cooley on Taxation,—3d ed.—225, *et seq.*)

Section 1 of article 8 of the constitution is a command to the General Assembly to provide a thorough and efficient system of free schools where all children of the State may receive a good common school education, and the high school is a part of the system of free schools. In the execution of the duty enjoined by the constitution the General Assembly has charged separate districts with the duty of maintaining the schools and raising money by taxation for such maintenance, so that establishing both district schools and high schools has been made a local and corporate purpose. (*Cook* v. *Board of Directors,* 266 Ill. 164.) The effect of the act of 1915 is to require the tax-payers in a district maintaining a high school to indirectly contribute to the tuition of persons residing in districts maintaining no such school, and thereby to contribute to the local and corporate purpose of furnishing an education to the children of such district. The tax-payers of the district maintaining a high school pay to make up the State school fund and

then are deprived of a portion of it for the benefit of districts not maintaining any high school; and the same is true of a district not maintaining a high school which does not send any of its pupils to a high school in another district. The tax-payers of a high school district offering the advantages of a high school education are indirectly forced to assist in the education of pupils living in other districts. The act violates the fundamental principle of uniformity and equality in taxation and contravenes section 1 of article 9 of the constitution.

The effect of the act is to exempt owners of property in districts not providing four years of recognized high school work from paying taxes proportionate to the value of their taxable property as compared with the taxable property of other districts, to the extent that the State tax is appropriated to a local and corporate purpose. The result is to release the districts from the payment of taxes for such purpose, and that is a violation of section 6 of article 9 of the constitution, which provides that the General Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof or the property therein, of their or its proportionate share of taxes to be levied for State purposes, nor shall commutation for such taxes be authorized in any form whatsoever. The State-wide school tax is a tax for a State purpose, to be apportioned to and distributed by the Auditor among the counties and by the county superintendent of schools among the districts in the county, and by the act in question the school district maintaining no high school is released from taxation for the local and corporate purpose of paying tuition of its pupils residing in the district and attending schools outside of the district. In *People* v. *Barger,* 62 Ill. 452, it was held that the act purporting to exempt the inhabitants of Shawneetown from State taxes, which required the levy of a tax equal to the tax released by the

274 — 35

State to be used exclusively to the constructing of a levee to protect the city from overflow, was in conflict with the constitution. The construction of the levee to protect the city from overflow was a public purpose, but it was local, and the exemption was equivalent to an appropriation of State taxes to such a purpose. In *People* v. *Lippincott,* 65 Ill. 548, an act appropriating State taxes, except the school and two mill tax, in certain townships to aid in the improvement of the Kaskaskia river was held to be abrogated by the present constitution because in conflict with section 6 of article 9, although the tax was professedly received and applied for State purposes. It was not so applied, in fact, but was applied to making a local improvement, and the principle of the decision is in no way affected by the fact that the improvement was by a navigation company. The act of 1915, by providing for the payment of tuition from the State tax, amounts to a return to school districts not maintaining a high school a part of their taxes levied for a State purpose, which effects a practical release or commutation of taxes.

It is argued that the act is void because it gives the county superintendent an arbitrary discretion to limit the tuition charge to $40 per annum, but while the act provides that the superintendent may so limit the maximum amount for each pupil, he is required to notify the high schools in the county before the opening of the school year, and the right to attend the school is subject to the approval of the high school board. They must consent to the admission of the pupil at $40 per annum if the superintendent should fix that charge, and power is not vested in the county superintendent to compel any high school board to furnish tuition at that price.

With the greatest consideration for the law-making power, and under the rule that all doubts must be resolved in favor of the constitutionality of the act, it must be held

that the act of 1915 is void because in conflict with constitutional limitations.

The decree is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*